3-19-0555 Sheila Cargle vs. Timothy Sanders, Joseph Kokoschka & Morris Hospital & Health Care Centers, Appalee Council, are you connected to audio? Mr. Basel? Yes, I am, Mr. Basel. Thank you, Judge. Mr. Larson? Yes, I am, Your Honor. Mr. Thompson? Yes. Okay, video and audio connections are made. Mr. Basel? Yes. You may proceed. Thanks, Your Honor. May it please the court, Your Honor. I represent the appellant, Sheila Cargle, in this matter and this case is before you today on an appeal that granted the defendant's summary judgment motions on one, the race ipsa locator count not being applicable because according to the lower court, the plaintiff did not name a defendant that should have been named in that count and the second basis is from the lower court granting the evidence of negligence, direct negligence, against the defendants. First of all, I want to clear up three things in this case. The appeal is properly in the court as jurisdiction under 303A, not 304A, so that was a typographical error in our brief. Second, count one was not dismissed fully. Count one was a count of against the defendant doctors, Kokoska and Sanders, individually and as of agents of Morris Hospital. Now, on a prior summary judgment motion, the lower court found there was no agency between the defendant doctors and the hospital, so that claim was dismissed. However, count one continued on as to the defendant doctors as far as negligence. There's just no, there's no agency found between them and the hospital. Um, count two was negligence against the hospital. Count three was a count for race ipsa locator. The third thing I want to bring to the court's attention is that on page 24 of the plaintiff's brief, um, in the question and answer section on that page, um, there was, uh, the insertion of, of, of Reardon, who is a CRNA in this case, and we'll get to him in a few. Um, it should have been Sanders. Um, and this comes in Dr Kokoska's testimony, and that's important because in Dr Kokoska's testimony, he nowhere even names or refers to, uh, to the CRNA Reardon at any time or in any manner whatsoever. And I'll get to that in a second. So now, so I'm clear on what you're correcting in the brief. It's under a subsection. I could coast us testimony in that first paragraph. Reardon should be Sanders on page 24. Correct. Okay. And that's the second answer of the questioning there under the coast. His testimony. Correct. Okay. Thank you. And when, when did you discover these, uh, errors in your brief? Um, I was looking over it, um, just over the last few nights. I don't think it affects the, the appeal at all. Um, the defendants brought it up in their, in their briefs. And so I just wanted to address that. Okay. Um, I noticed that they noted that it should be under 303 a not 304 a and then they are correct on that. Um, so what could you clarify? Could you clarify? I'm sorry. Could you clarify again where the change is supposed to be in the opening brief? Yes. Underneath Kikoskis testimony. There's some question and answers there. And on the second question and the second answer, the second answer says he, and in brackets, it has reordered Reardon close brackets, maintain the airway that should say Sanders. Because this is Dr. Kikoskis testimony. And in that testimony, Reardon has never mentioned at all. Okay. Thank you. Sure. Now I want to just talk about the positioning of the, um, patient and this is crucial. Um, I want to kind of paint a picture for you. So first of all, the patient is laid on her back in the supine position. She's then going to be flipped over, rolled over onto a Wilson frame, which is for your honors, kind of like a hump on an operating room table where the patient is then flipped over onto her stomach. And for lack of better terminology, her rear side is up in the air. So the doctors can perform this hemorrhoid surgery. And I want your honors to keep that in mind. This was a hemorrhoid surgery and she ended up coming out of the surgery with a torn left shoulder rotator cuff. So anyway, they're flipping over on this Wilson frame and they're rolling her over into what is known as the prone position. And that's face down. And she's on this hump with her rear side up in the air so that that surgeon can operate. Now she has an endotracheal tube down her throat with tubes coming out of it. And as she's being rolled over, the anesthesiologist or the CRNA has to hold onto that endotracheal tube and the and her neck and roll with the patient as the others are flipping her. And the evidence is going to show that Reardon, the CRNA, took no part in touching Ms. Cargill's left arm. And that's the issue in this case, who injured Ms. Cargill's left arm. So when you hear terminology like, oh, well, he positioned, he monitored, he watched, things of that nature, what we're concerned is if he injured the left arm, because someone is present in the operating room does not mean that they were negligent. We are here to show, did Reardon have anything to do with her left arm? Was he a possible cause of her injury? And he was not. Now, after she's flipped over on the table, he's maintaining the airway and holding this endotracheal tube. There is no testimony that he did anything but that. The only thing that the defendants and apparently the lower court hung its head on is that a nurse Brozac was in the room also. And we're going to talk about her testimony, but I want you to, um, uh, first of all, realize the judge's order on this and the August 29th, 2014 order, which is on page 2393 and 2394 of the common law record. And the judge even admits that he did not sift through the record to find testimony concerning actual hands on, on the plaintiff's shoulder of nurse Reardon. And we would argue that the plaintiff deserves better than that. The judge says in his ruling, the court notes that the finding that the only direct evidence of hands on plaintiff's shoulder were by the Morris hospital nurse, Dr. Kokozka and Mr. Reardon may be faulty. The court did not sift through the record to find more direct testimony. Well, the lower court is admitting that saying that Reardon had hands on her left shoulder is faulty in his own ruling. He notes that I want to talk about the positioning now, according to everyone's testimony, we laid it out. And I know sometimes, you know, when you have to go into the minutia, it's terrifying and boring and whatever else, but we have to do it in this case. And that's what we put in our briefs. And I would ask you to look closely at that. Defending Kokozka testified Sanders was at the head. Kokozka was to the right. A Morris nurse was to the left and nurse Brozac was at the feet. Nowhere does he mention Reardon or say Reardon at any part in touching Sheila's left arm. Dr. Sanders says Reardon was at the head and his testimony is clear. His only job was to maintain the airway and the endotracheal tube. And that is of utmost importance. So this patient can breathe, especially when they're flipping her over, there would be no way for him to hold the head and neck and the endotracheal tube in her mouth and also touch her left shoulder. It's physically impossible. Sanders testified that Reardon was at the head. Kokozka was at the right. Sanders was at the left, flipping Sheila's left arm. And again, nurse was at the feet. Nurse Brozac, who was at the feet of Sheila at the time of this flipping over indicates that Reardon and Sanders was at the head, maintaining the airway in the head. Kokozka again was on the right. Another Morris nurse was on the left at the left arm and Brozac was at the feet. No one puts Reardon at Sheila's left arm. Kokozka never mentions Reardon. Sanders never mentions it. And Brozac never mentions it. Now, the defendants raised the issue that, well, the experts say that, you know, all of them are part of the That statement indicates that each of these team members had a duty. We agree with that. They had a duty. But in order for us to prove negligence, we then have to prove breach of duty, causation and damages. And I don't think the defendants are creating case or want to create case law that says that if a plaintiff in a medical malpractice case can prove that one person in the operating room was negligent, then all the rest of them are liable and all the rest of them go down with the one part of the team member that was negligent. That's not the case at all. That is not the law in this state. And we did not claim any kind of enterprise theory either, where if one's negligent, then they all go. As your honors know, the plaintiff must prove negligence or liability rather on each person in that operating room. And that's why we at the time of this, we're not attributing any kind of liability on her part. When the patient's being flipped over, she's holding the feet. We're not attributing any liability to the CRNA Reardon. He was at her head holding her head holding the tubes and flipping your head over. That's why we do not believe that in order to state a case for race, it's a low quarter that nurse nurse Reardon is a necessary defendant or party. There's no evidence that he did anything to her left arm. Now the defendants will also hang their hat on statements made by nurse Brozac. And, um, if the court reads, um, nurse Brozac statements, you will find that her statements are ambiguous and, uh, hearsay and inadmissible and speculative at best. She indicates when asked about what she heard, she says, I do not even know who said it, what shoulder they were talking about or who was doing what up there. She doesn't even know if they were talking about the left arm or the right arm and they were, she's not even sure, um, what they were referring to. She just knows that she heard something possibly coming from anesthesia and about the patient's arm being tight. This statement is important as far as timing, because this statement was supposedly made just after the patient was flipped over onto her stomach. And this gets important as to timing and as to the next issue about whether the plaintiff presented enough evidence as to a direct negligence against these defendants. Um, so I would ask that you read nurse Brozac's who even said this or, or who actually was the one who was touching her arm if they touched her arm and which arm they were talking about. It's simply speculation. We have shown the plant has shown that more probably true than not. It was defending Krakowska defendant Sanders and the other Morris hospital nurses, Stewart and pointer that actually had hands on her left arm and were the ones that could have possibly injured her left arm. Now with regards to Reardon, our expert even says that the person, and this is on page 2118, the common law record. Um, she was asked whether she thinks that the person who's monitoring her head could have contributed to the injury in this case. And she says it should not have. Um, and Dr. Eastman, who's the anesthesiologist expert also was asked again on page 2119. Um, do you agree that, uh, whoever was maintaining the head during the rolling and who's ever maintaining the legs wouldn't have contributed to the injury? The answer is I don't think they contributed to it, so we're not placing any blame on them. There's no indication that Reardon had anything to do with her injuries. Um, now with regards to timing, I would point your honors to common law record, uh, page 20, 70, the plaintiff's expert surgeon brand was asked, would you have the opinion that it's most likely that at or about that time that the shoulder injury occurred, there was an objection. And then the witness answers. I think it's more likely that it occurred in beforehand rather than after the surgeon, the patient being returned to the transportation cart. He's also asked again on page 2074. All right. But he wasn't for the initial flipping over and positioning of patient. Is that a fair statement? Yes. Question. Is it your opinion that most likely the injury to Sheila would have occurred during the initial flipping and positioning as opposed to after the surgery? There's an objection. And then on page 2075, Dr. Brand, the plaintiff's expert surgeon indicates, I think it's more likely than that, that an injury would have occurred at the initial transfer from the transportation cart to the Wilson frame. So there's the time frame when this occurred. And at that point when he's being, when the patient's being transferred, Reardon had nothing to do with the left arm whatsoever. No one puts them there at that time with regards to your time is up. Um, and you'll have time and reply. Okay, thank you. You're honest. Mr Larson, you may respond. Thank you, Your Honor. Justices Council may please the court. I don't want to spend a great deal of time going through the facts because, as I pointed out in our brief and as plaintiff conceded in his, the relevant facts are not in dispute. So what are those undisputed facts? First, Sierra and a weird and was a part of what they define as the quote surgical team. Close quotes to Sierra and a weird and was in the room for every part of the surgery. When the placement of the patient into the surgical frame through the entire surgery itself while the patient was being removed from the surgical frame and returned back to the gurney, he was there for every single part of it. Sierra and a weird and had hands on role in the care of this patient. He had his hands on this patient. The injury occurred for the own argument between 8 30 a.m. which is right before the start of induction before they transfer to 10 20 a.m. Now they say the place of the injury is Morris Hospital. Well, more specifically, it's the operating room at Morris Hospital. As plaintiff's counsel pointed out, it wasn't a janitor who was 10 rooms over. It was who was in the operating room. So let's talk about who was in the operating room. We know that every minute of that time, Sierra and a weird and was in the room hands on with this patient. Most of you define hands on Mr Larson. Well, as counsel said, he was up at the head. He had his hands on his neck and her neck and her head and holding the endotachial to and then he would have been the anesthesiologist at the end of the procedure. The anesthesia team member who would have assisted in transferring the patient off of the surgical frame and back onto the gurney. Dr Sanders was not even in the room for that to happen. He was also responsible during the entire time per the testimony of everyone undisputed to meet to be aware of whether the arm or arms had come loose and we're flopping around, which was one of the potential causes of the injury that players own experts have specified was the case, and that would have been part of his responsibility. Obviously, my client, Dr Sanders, could not have carried out that responsibility when he was not in the room. There's one anesthesia team member who's there during the surgery after the initial placement. That is the unnamed party CR and a Reardon. There's a question as to whether Dr Picasso was in the room at the end of the surgery as well. Now, none of the plaintiffs expert could say exactly when the injury occurred, though they offered some possibilities. Possibilities. None of plaintiffs experts could say exactly how the injury occurred. They offered possibilities. None of them identified a specific negligent act by anyone that caused this injury. They simply offered possibilities. Plaintiffs expert against Dr Sanders, anesthesiologist Dr Eastman said, and I quote, the violation of the standard of care comes in the fact that the patient had a left shoulder injury after surgery. That's as best as she could come up with. She also said that the injury may have occurred when the during the time of the patient was being moved off the operating frame onto the gurney. Again, when Sierra and a Reardon was there, and Dr Sanders was not. She also volunteered when she was being asked that question that it may have occurred, quote, during surgery if the arm fell off the arm board or if the bed was moved with the arm secured. Plenty of surgeon expert Dr Bland said Sierra and a Reardon was part of the surgical team and thus responsible for preventing the very injury that we're talking about here. So those are all facts that are not in dispute. That is the actual undisputed testimony and factual information. Now, I'd like to address the additional authority that was cited by plaintiff very recently. I would note we actually never received. The defense never received notice of the motion, but we did not want to challenge it because we didn't want to create an unnecessary procedural issue here. And frankly, I think the Willis case that Plains Council sites actually helped support the defense argument. As you will note in Willis, this was not a review of an order granting summary judgment as we have in the case at bar. There is no issue in this case, as there was in Willis, of testimony or witnesses being barred from testifying. And the pertinent facts in this case are not in dispute. As we've said, this court need not sort out factual issues as the court in Willis had to do, nor weigh expert testimony as the court in Willis attempted to do. But most importantly, in Willis, the plaintiff actually named the C. R. N. A. S. Who were the defendants in the case? Every single one of the people who was part of the surgical team when they tried to pursue racist were named. They had an expert witness to testify against those C. R. N. A. S. So they actually included all of that because what was necessary, as we know, one of the case law is they took the step to eliminate the injury. That's what was done in Willis. It was not done here. Now, where plaintiff's argument fails in the case at bar and where the trial court got it right is the issue of exclusive control. Plaintiff actually tried to argue that the word exclusive has somehow been removed from the definition of control. It is not. In fact, the majority opinion in Willis, the very case plaintiff cited, references the term exclusive control at paragraph 36. So what does exclusive control mean? Plaintiff cites the cases, including Willis, that talk about the ability to establish the control element merely by showing the plaintiff was under the defendant's control during surgery and was unconscious. That may be true, but that does not establish exclusive control. If alleging the injury occurred during surgery was sufficient, then theoretically, any one individual defendant could be named because they were part of the folks that were in control, and they would have to defend themselves for the entirety of all the care that was provided, even with all the other defendants, all the other participants not being named, as actually happened here. No, that's not what the law requires. The law requires that the plaintiff, in order to flip the burden of proof, must establish that the named defendants had exclusive control over the instrumentality that may have caused the injury. Clearly, plaintiff has not done that here. And it's important in considering why the standard what a race of vocator claim does. It shifts the burden of proof. It stands it on its head. It makes a defendant like my client, Dr. Standards, prove his innocence and, in fact, prove his innocence in a situation where the injury may have occurred when he was not even in the operating room. So in order to do that, you have to establish that anybody who may have been involved was named as a defendant. And it's not definitive proof. Plaintiff wants to that Mr Reardon is the one who caused the injury. That's not the standard. That's again flipping the burden of proof onto the defense. The standard is the plaintiff must, uh, eliminate the possibility. That's the language. Eliminate the possibility that the injury was caused by someone other than any named defendant. So that language is critical to establishing exclusive control here, and plaintiff has not done that. All of the experts concede, uh, they cannot say what act of negligence caused the injury or when it occurred. They can just say something happened. In fact, as plaintiff put it in his reply brief, Sheila and her experts can identify with certainty the who exact surgical team members. Remember, they said that Mr Reardon was part of that team when 8 30 a.m. to 10 20 a.m. on December 22 2011 and where Morris Hospital where her injury occurred. Now, again, it's not just Morris Hospital. It's the operating room. So sitting aside for a moment, the inability of plaintiff to say how and note that quote didn't say they testified as to how the injury occurred. Let's look at the win the win, which is that 8 30 to 10 20 a.m. timeframe. That's the timeframe plaintiff specified in his reply brief, and he said that's the time when the injury occurred, rolling patient onto the frame the entirety of surgery and rolling off of the frame. Sierra Reardon was there for every moment of that, and my client, Dr Sanders, was not Mr Larson. Yes, Your Honor. I have two questions for you. The trial court in its order, um, says that there is no direct evidence that anyone other than reordin or kakoska was actually hands on the left shoulder or the left arm. Um, I believe that part of the transcript that was cited in the plaintiff's, um, statement of facts quoted Dr Sanders in his deposition as saying that he actually was the one who was at her left side with her left arm when the turn was made. Is that correct or incorrect on the initial placement of the patient onto the frame? That is correct, Your Honor. So Dr Sanders was did, in fact, so the trial court had that wrong. Um, I I'm not sure exactly the court phrase it at least asked the initial placement. Yes, Dr Sanders had control of the left arm. Dr Sanders was not in the room when the patient was taken off of the frame and put into the gurney, which plaintiffs experts have conceded is also a time when the injury may have occurred. Okay, thank you. And then my second question as I read the arguments in the briefs and as I'm listening to you all argue this morning, there seems to be a suggestion that there is no difference between the group that is responsible for her care and the group that is responsible for the injury. Is it your argument that those two concepts are the same? Well, Your Honor, I think where it comes in is that plaintiff's expert says that the entire surgical team had a duty to prevent this injury from occurring, which is a little bit of a subtle difference from that. Certainly, everybody who's in the room caring for the patient is responsible for their care. But Dr Bland brand was speaking to the issue of who had responsibility to make sure this injury didn't happen. And he included the entire surgical team, including Mr Reardon, who would have been there when the patient's arms may have been falling off the table and that sort of Okay, I guess that answers my question. Thank you. Thank you, Mr Larson. Your time is up. Uh, Mr Thompson, you may proceed. Uh, may please the court counsel. Uh, I'm Matt Thompson. I represent Morris Hospital. Uh, I obviously don't want to reiterate everything that Mr Larson has stated. I think he has has clarified those issues well, but there are a couple of points that I would like to clarify. As I understand the plaintiff's argument this morning, uh, essentially, the plaintiff is arguing that there was never any reason that he would have named C. R. N. A. Reardon as a defendant, but then takes the position in the brief that, uh, C. R. N. A. Reardon was named as a defendant in 0.2 under the argument. So I want to direct address that and make sure that this is very clear for purposes of racist or direct negligence allegations against the hospital. C. R. N. A. Reardon was never alleged to be an apparent agent of the hospital. If you look at count one of the plaintiff's complaint, it is alleged that Dr Kushka and Dr Sanders are apparent agents of the hospital makes that explicit statement of apparent agency. But then, if you look at count two directed against Morris Hospital itself, um, there is no allegation that anyone other than, uh, Kushka or Dr Sanders are alleged to be apparent of the hospital. Specifically, there's no allegation that any C. R. N. A. Much less C. R. N. A. Reardon, uh, is an apparent agent of the hospital. Count three again makes no mention of apparent agency of anyone else with the hospital. So to me, what this clarifies is that, uh, at the time of pleading, the plaintiff understood the difference between alleging apparent agency versus actual agency because the plaintiff did that in the complaint. Um, and and and that's that's spelled out. If you look at the difference between count count one versus counts, uh, two and three. Um, the other point is that the appellant was aware that Reardon was present in the operating room, what his role was and that he was not employed by Morris Hospital. Uh, Morris Hospital's answers to interrogatories. The plaintiff specifically asked us, uh, was C. R. N. A. Reardon, uh, an employee of the hospital along with with three other nurses that the plaintiff asked us And in our answer, uh, we stated that, uh, C. R. N. A. Reardon was an independent contractor, whereas the other nurses were actual agents. So this is something that the plant was aware of from our answers to interrogatories. Similarly, Dr Sanders at his deposition, he was asked whether C. R. N. A. Reardon was an employee of his corporation, and he that he was. So the plaintiff was aware of of the employment of C. R. N. A. Reardon from at least both of those things. Uh, and if you look at the supplemental authority that the plaintiff filed in this case, the Willis versus Morales case, the plaintiff named as defendants three C. R. N. A. Is that were involved in that procedure. The plaintiff also disclosed a C. R. N. A. Expert. Uh, that's that's starkly different than than what we have here. Um, and and to that last point, the appellant has not disclosed a C. R. N. A. Expert. Uh, the time, uh, for disclosing experts has come. They were all deposed. The only experts that the plaintiff disclosed were a surgeon and anesthesiologist and a nurse. Uh, this clarifies that the that the plaintiff was making no allegation of negligence against the C. R. N. A. So the idea now to be argued that it's in the complaint just doesn't make sense. Uh, the only way proving any allegations against a C. R. N. A. Would be by disclosing a C. R. N. A. Expert under the standard from Sullivan versus Edward Hospital. Uh, and finally, regarding the direct allegations of negligence against the registered nursing staff, I would just like to say the plaintiff's only disclosed expert was nurse Flanagan. She testified about possibilities that may have occurred, but admitted there's no evidence that those possibilities occurred. Uh, she even said herself, I can only speculate about possible causes, and obviously speculation is not allowed. Uh, thus, there is no nursing negligence in this case, and summary judgment on that count was appropriate. Thank you. Okay. Thank you, Mr Thompson, Mr. Uh, uh, basil. Uh, am I pronouncing that right? Oh, your audio is off. Yes, that's correct. Okay. Uh, you may reply. Thank you, Your Honor. First of all, with regards to the, um, rebuttal of doctors, um, again, they indicate that Reardon was part of the team, that he was present in the emergency or the operating room that he was hands on. These are all attempts to deflect the attention away from your honors as to did Reardon have anything to do with to her left arm. The fact that he was part of the team does not mean he was liable, that he was present in the operating room does not mean he was liable, that he was hands on her head and council even described holding her head and neck and the two that is hands on. But that does not mean that he's negligent for the injury to her left arm. So plaintiff, that's what Dr Sanders doing at that time. Dr. St. Well, that's where the testimony all flicks. So Kakoska says that Sanders maintaining the airway and endotracheal to he's catching the patient. There's a hospital nurse on the other end and then there's a hospital nurse at the feet. Sanders says that he was at the left side of Sheila, flipping her left arm over into Kakoska chest and that Reardon was at the head, maintaining the airway and endotracheal to and that another nurse and Reardon were touching the same area of the body, perhaps at different times. Why wouldn't CNA Reardon be required to be named in the complaint? CNA Reardon never touched her left arm. There's no testimony of that whatsoever. The only thing he touched was her head. He maintained the airway and I want to again emphasize that to do that, you have to hold the patient's head underneath from and you can read that in the testimony. You have to hold the patient's head and neck and then you also have to hold this big endotracheal tube and the tubes and coming out of it and then she's being flipped over. You got to hold that so it doesn't come dislodged and she loses her breathing capabilities and so one person has to hold that. So there's no way for Reardon, no one testified that Reardon also helped in moving her left arm. That's another kind of red herring that this court should take a look at is when they say, well, Sanders was out of the operating room after the initial flip and so Reardon was in the operating room on the flip back to the cart. Well, you have to use your common sense and just logic when you look at this. If Reardon now is the only part of the anesthesia team in the operating room when she's being flipped back onto the cart, who is maintaining the airway and the endotracheal tube? It's Reardon. So if Sanders wasn't in the room at the time and that's just what he said after we already questioned him and then his attorney asked him, but he said he was in there the whole time. He said the flip would be just the opposite of what happened on the initial flip. But Reardon, if he was the only one from anesthesia in the operating room at the end of the surgery flipping her back, he would have to maintain the endotracheal tube and the head. He couldn't delegate that to a nurse and say, oh, here, you take her head and endotracheal tube. That would be medical negligence in and of itself. And what's more important is, as I previously described, Dr. Brand, our expert, said that he believes that more probably true than not, it occurred on the initial flip over. And that's because nurse Brozac said that some kind of statement was made about Sheila's arms just after that flip. So it kind of all coincides. Now, with regards to what plaintiff has to show, they keep saying that, you know, we have to show exclusive control. I would direct your honors to common law record, page C, 1993 and 1994. And it's IPIs 10509 and 2201. And they clearly state what the elements are. First, plaintiff was injured. Second, the injury occurred during procedure under the no exclusivity language is in this IPI. It's in the IPI itself. It goes to trial in this case. Third, that normal course of events, this injury would not have occurred if the defendant had used reasonable standard of professional care, while the procedure was under their control in brackets, management in brackets. If you look at 2201, IPI 2201, which 10509 references and says C 2201 in the comments there, it says the element second uses the term control and management rather than exclusive control. The Illinois Supreme Court recognizes that is not always necessary for the instrumentality have been in the exclusive control of the defendant at the relevant time. So that would negate whatever they're saying that we had to have exclusive control. We not only show that defendant Kukoska, defendant Sanders and the Morris Hospital nurses had control of this patient at the time, we also excluded CRNA Reardon and we excluded the nurse Brozac. Nurse Brozac had his feet. We're not going to assign liability to her. She was holding the patient's feet. We're not assigning liability to Reardon. That's why we didn't get a CRNA expert because he was holding the head and maintaining the airway. There's nothing to rebut that. That is the evidence in this case. Um, so your time is up. Can I just make one comment on the, uh, very briefly. Okay. Um, with regards to the direct negligence, the plaintiff has presented, uh, three experts and their two 13 disclosures indicate that there was six timeframes when this could have occurred. Dr. Brand again, narrows it down to the initial flip. They also indicated that this surgery and there was no evidence that this plaintiff had any injuries before this. The defendant subpoenaed 10 years of records. Couldn't find one ounce of evidence that she had a left shoulder injury before this. Immediately after she wakes up from the surgery, she's screaming in pain. Oh, my love. Okay. That's enough, Mr. Basil. I get, I was generous in giving you that. Thank you. Thank you, judge. I appreciate it. Okay. Uh, counsel all, thank you for your arguments in this matter. We'll be taking on our advisement written disposition shall issue. The court will stand and recess.